UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-290-GWU

MARY RUTH CURRY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

08-290  Mary Ruth Curry

   Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

  One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

08-290 Mary Ruth Curry

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-290 Mary Ruth Curry

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to

08-290 Mary Ruth Curry

make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

08-290  Mary Ruth Curry

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

08-290  Mary Ruth Curry

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mary Ruth Curry, a 23-year-old woman with a post high school education and no past relevant work experience, alleged disability beginning March, 2005 due to attention deficit hyperactivity disorder, Tourette's syndrome, a mood disorder, depression, and polycystic ovarian syndrome.  (Tr. 109-10).  An Administrative Law Judge (ALJ) found that the polycystic ovarian syndrome (PCOS) and attention deficit hyperactivity disorder (ADHD) were "severe" impairments but, based in part on the testimony of a Vocational Expert (VE), concluded that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and therefore was not entitled to benefits.  (Tr. 11-18). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff could perform any jobs if she were limited to "medium" level exertion, and had non-exertional restrictions consisting of (1) no exposure to unprotected heights, hazards, or dangerous machinery; and (2) would be limited to jobs requiring no more than simple, one- and two-step instructions with only occasional superficial interaction with other persons, and no highly stressful work, such as quota or production rate work.  (Tr. 51).  The VE responded that there were jobs that such a person could

08-290 Mary Ruth Curry

perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.). If the individual had a moderately limited ability to retain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting, the VE testified that there would still be jobs available which the plaintiff could perform. (Tr. 51-2).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff testified that her worst problem was ADHD, which limited her concentration, and also stated that stress made her irritable. (Tr. 42). She also felt that she had mood swings due to PCOS, which she felt had produced "hormonal symptoms." (Tr. 44). She stated, however, that she had been diagnosed with ADHD in the first or second grade, but with the medication Adderall she was currently able to take a 12 hour course load at Lindsey Wilson College. (Tr. 34-9). She testified that Tourette's syndrome had been a side effect of a medication she was no longer taking. (Tr. 46). She felt she had worked through her problems with depression, and while she was anxious, did not frequently have panic attacks. (Tr. 49).

The hypothetical factors given to the VE are supported by state agency reviewing sources. Dr. Amanda Lange opined in March, 2007 that the plaintiff's

08-290 Mary Ruth Curry

PCOS and allegation of dizzy spells were not even "severe" impairments. (Tr. 303). Therefore, in the absence of any opinion regarding restrictions from a treating or examining source, it appears that the ALJ gave the plaintiff the benefit of the doubt in choosing his physical limitations.

State agency psychologists Laura Cutler and Ann Demaree opined that the plaintiff would be moderately limited only in her ability to retain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 234-6, 285-7). These restrictions are consistent with one of the ALJ's hypothetical questions.

There is nothing to the contrary in the evidence from examining sources. Robert Spangler, a psychologist, examined the plaintiff on December 30, 2006 and diagnosed Tourette's syndrome "in remission," ADHD which was mild, and major depression, which was also mild. (Tr. 218). Spangler felt that her ability to sustain concentration and persistence and interact socially was "limited" to an unspecified degree, and it appears that his conclusions were considered by the state agency reviewers in formulating their functional capacity assessments.

Subsequently, the plaintiff sought treatment from Dr. Mizyl Damayo, a psychiatrist who diagnosed ADHD and a mood disorder. (Tr. 242-4). She assigned a current Global Assessment of Functioning (GAF) score of 60 to 70. (Tr. 244). GAF scores in this range reflect only mild to moderate symptoms. Diagnostic and

Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  After the administration of testing which was said to show there were 87.4 chances out of 100 that the plaintiff had no significant attention problem, Dr. Damayo concluded that the ADHD problem was controlled with medication.  (Tr. 336, 340, 351).  The psychiatrist did believe after further examination that the plaintiff had a possible "body dysmorphic disorder" but all of her recent examinations contained notations that the plaintiff reported that she was "fine" and sleeping well.  (Tr. 351-69).  In October, 2007, the plaintiff reported that she was able to concentrate in class and her biggest problem appeared to be that she was sometimes anxious about taking tests.  (Tr. 373).

       The plaintiff does not specifically challenge the functional restrictions found by the ALJ, focusing instead only upon the procedural issue of whether the ALJ provided a sufficient rationale for discounting her credibility. The ALJ had noted that the plaintiff's ADHD and PCOS could reasonably be expected to produce some symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.  (Tr. 16).  He noted that the objective medical evidence as a whole did not confirm the degree of total disability which she had alleged.  (Id.).  While the plaintiff finds fault with this conclusion, it is amply supported by the medical evidence.  Not only was the plaintiff successfully taking college level courses, recent testing indicated that, with medication, it was

08-290  Mary Ruth Curry

questionable whether she had any attention deficit.  Her treating psychiatrist stated that her ADHD was controlled.  There is no evidence that her mood swings due to any possible hormonal imbalance were causing any limitations on her ability to function beyond the extent found by the ALJ.  The ALJ noted in detail the daily activities which the plaintiff had reported that she engaged. (Tr. 14). Social Security Ruling (SSR) 96-7p, cited by the plaintiff, provides that daily activities are one of the factors to be considered in the credibility of a plaintiff's allegations, along with the effectiveness of any medication.  It appears that the ALJ's decision is within the guidelines established by this ruling.

The administrative hearing is supported by substantial evidence, and will be affirmed.

This the 9th day of September, 2009.

Signed By:

_G. Wix Unthank_

United States Senior Judge